CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 2 5 2019

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| SOUTHERN ENVIRONMENTAL LAW CENTER, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:18CV00037 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICK MULVANEY, in his official capacity as Director of the Office of Management and Budget, | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| | ) | |
| | ) | |
| Defendant. | ) | |

Southern Environmental Law Center ("SELC") filed this action against Mick Mulvaney, the current director of the federal Office of Management and Budget ("OMB"), seeking to compel OMB to disclose records requested under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The case is presently before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, the motions will be denied without prejudice.

**Background**

On March 13, 2017, President Donald J. Trump issued Executive Order 13781 ("E.O. 13781" or the "Executive Order") as part of an effort to "improve the efficiency, effectiveness, and accountability of the executive branch." E.O. 13781 § 1, Pl.'s Ex. 1, Dkt. No. 13-2. The Executive Order contained separate instructions for "the head of each agency" and "the Director of [OMB]." Id. § 2. Each agency head was given 180 days to "submit to the Director a proposed plan to reorganize the agency, if appropriate, in order to improve the efficiency, effectiveness, and accountability of that agency." Id. Following the receipt of proposed plans from the individual

agencies and the opportunity for public input, the Director of OMB was instructed to prepare and submit "a proposed plan to reorganize the executive branch in order to improve the efficiency, effectiveness, and accountability of agencies." Id. OMB's proposed plan was required to include, as appropriate, "recommendations to eliminate unnecessary agencies, components of agencies, and agency programs, and to merge functions," as well as "recommendations for any legislation or administrative measures necessary to achieve the proposed reorganization." Id. In developing the proposed plan, OMB was required to "consult with the head of each agency." Id. The Executive Order further provided that none of its provisions should "be construed to impair or otherwise affect . . . the authority granted by law to an executive department or agency, or the head thereof[.]" Id. § 3.

In April of 2017, Director Mulvaney issued a memorandum to "provide[] agencies guidance on fulfilling the requirements of [the Executive Order]" (the "OMB Memorandum"). OBM Mem. M-17-22 (April 12, 2017) 1, Pl.'s Ex. 2, Dkt. No. 13-2. The OMB Memorandum explained that "all agencies" would be required to "[s]ubmit an Agency Reform Plan to OMB in September 2017 as part of the agency's FY 2019 Budget submission to OMB," and that an "initial high-level draft of the Agency Reform Plan [would be] due to OMB by June 30, 2017." Id. The memorandum also outlined the steps OMB would take to formulate its "comprehensive Government-wide Reform Plan." Id. at 2. The memorandum explained that OMB's plan would "rely on three primary sources of input: Agency Reform Plans, OMB-coordinated crosscutting proposals, and public input." Id.

Section II of the OMB Memorandum provided an overview of the process and timeline for developing and implementing agency reform actions. The memorandum again noted that agencies

would have until June 30, 2017 to submit a "high-level draft of their Agency Reform plan that includes the [a]reas the agency is developing for their reforms." Id. at 3. The memorandum explained that OMB would meet with agencies in July of 2017 to "provide feedback" on their high-level drafts and "identify actions that [could] be implemented immediately." Id. "Following the meetings in July," agencies were expected to "take actions to implement agreed-upon reforms, while continuing to assess reform options for inclusion in the Agency Reform Plan and the FY 2019 Budget." Id. The Agency Reform Plans were due to be filed in September of 2017 as part of the agencies' budget submissions for the 2019 fiscal year ("FY"), and OMB expected to release its "final Government-wide Reform Plan . . . as part of the President's FY 2019 Budget request to Congress." Id. at 4. The OMB Memorandum recognized that "[a]gencies [would] begin implementing some reforms immediately while others [would] require Congressional action." Id. at 4.

The OMB Memorandum also provided insight on the expected components of the Agency Reform Plans. The memorandum listed factors that each agency should consider in analyzing ways to improve its efficiency and effectiveness, including whether some or all of the agency's functions or programs were duplicative; whether services, activities, or functions were non-essential; whether services or functions could be better performed by state governments or private entities; whether the costs of continuing to operate a component or program were justified by the benefits it provided; and whether an agency or program could be redesigned to meet the needs of the public or an agency's partners in a more effective manner. Id. at 6–7.

On June 30, 2017, agencies submitted high-level drafts of their Agency Reform Plans, as required by the OMB Memorandum. See Decl. of Mark Bussow ("Bussow Decl.") 5, Def.'s Ex. 2,

3

Dkt. No. 21-2.  In July of 2017, OMB began meeting with agencies to discuss their draft plans.  Id.

On September 11, 2017, agencies submitted their Agency Reform Plans to OMB, along with their

budget requests for FY 2019.  Id.

On November 9, 2017, SELC submitted a FOIA request to OMB seeking "records in the

custody or control of OMB submitted in connection with Executive Order 13781 by any agency

responsible for the management of federal public lands."  FOIA Request 1, Pl.'s Ex. 5, Dkt. No

13-2.  In particular, SELC requested "[all] submissions" from the United States Forest Service, the

United States Fish and Wildlife Service, the National Park Service, and the Bureau of Land

Management "related to Executive Order 13781, including but not limited to the required reports

along with any appendices, attachments, or enclosures, as well as any other related records, whether

draft or final."[1]  Id.  Less than one week later, OMB confirmed receipt of the FOIA request and

assigned it reference number 2018-061.

On January 2, 2018, SELC called OMB to inquire about the status of the FOIA request.

Dionne Hardy, OMB's FOIA Officer, acknowledged that a response was due and advised that she

would check on the status of the request.    Subsequent inquiries in March of 2018 went unanswered.

On February 12, 2018, OMB released the President's Budget for Fiscal Year 2019 (the

"President's Budget"), which included a summary of the efforts undertaken in response to the

Executive Order.  See President's Budget 10, Pl.'s Ex. 4, Dkt. No. 13-2.  The President's Budget

indicated that the plan to reorganize the Executive Branch would include "changes that can be

accomplished with existing authorities as well as others that would require new funding and

---

[1] Each of the identified agencies falls within the Department of Agriculture or the Department of the Interior.

authorities." Id. The President's Budget also indicated that some changes had already been implemented. See id. ("For instance, in order to improve customer service, the Department of the Interior has already begun to shift employees away from Washington, District of Columbia, closer to the citizens the Agency serves.").

As of May 30, 2018, OMB had still not responded to the plaintiff's FOIA request. Consequently, SELC filed the instant action seeking to compel OMB to provide all nonexempt, responsive documents.

On June 12, 2018, Assistant United States Attorney Sara Winn, who had been assigned to represent OMB, contacted SELC's counsel via email and inquired about scheduling a conference call regarding the pending FOIA request. SELC Senior Attorney Kimberley Hunter participated in the requested conference call, along with another SELC attorney, Morgan Butler; Ms. Winn; and Matt Carney, OMB's Assistant General Counsel. During the conference call, Mr. Carney asked SELC to clarify whether it was seeking email communications. According to SELC, Mr. Carney indicated that OMB would be able to process the FOIA request more quickly if email communications were excluded from the search for responsive documents. Ms. Hunter subsequently confirmed that SELC was not seeking to obtain email communications in response to the FOIA request.

On June 21, 2018, OMB publicly released its Government-wide Reform Plan, titled "Delivering Government Solutions in the 21st Century[:] Reform Plan and Reorganization Recommendations." See Government-wide Reform Plan, Pl.'s Ex. 3, Dkt. No. 13-2; see also Bussow Decl. 5. The plan included, among others, proposed changes within the Department of the Interior and the Department of Agriculture. OMB reported that "[m]any of the more

straightforward, agency-specific organizational improvement opportunities were included in the FY 2019 Budget released in February 2018 or were adopted by agencies under existing authorities." Id. at 9.

.SELC and OMB had another conference call on June 27, 2018, during which they discussed the range of documents responsive to SELC's FOIA request. According to SELC, "Mr. Carney indicated that there were approximately 60–70 responsive documents." Declaration of Kimberley Hunter ("Hunter Decl.") ¶ 15, Pl.'s Ex. 6, Dkt. No. 13-2. However, OMB maintains that it "told SELC that the search revealed a handful of responsive documents." Def.'s Reply Br. 5, Dkt. No. 21 (citing Declaration of Heather Walsh ("Walsh Decl.") ¶ 8, Def.'s Ex. 1, Dkt. No. 21-1 (averring that OMB Office of General Counsel staff verbally represented to SELC's counsel that "a search would likely result in a handful of responsive documents")).

By letter dated July 18, 2018, OMB formally responded to the pending FOIA request and advised the plaintiff that the agency had located and withheld two documents. The letter stated, in pertinent part, as follows:

> In response to your FOIA request, OMB conducted a search of its files and located two documents, totaling 64 pages that are responsive to the request. We are withholding these documents in full pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5), because they consist of pre-decisional and deliberative internal Executive Branch communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making.
>
> This concludes OMB's response to your request.

Response to FOIA Request, Pl.'s Ex. 7, Dkt. No. 13-2.

On September 5, 2018, SELC moved for summary judgment on the following grounds: (1) OMB's search for responsive documents was legally inadequate under FOIA; (2) OMB cannot

lawfully withhold the responsive documents under the deliberative process privilege recognized in 5 U.S.C. § 552(b)(5); and (3) OMB must nonetheless provide all segregable, non-exempt information.

The defendant subsequently requested and received an extension of time to respond to the plaintiff's motion for summary judgment. In the course of preparing its response, OMB's Office of General Counsel "became aware of [three] additional responsive documents." Walsh Decl. ¶ 9. OMB has withheld the additional documents in their entirety.

On November 5, 2018, OMB filed a brief in opposition to the plaintiff's motion for summary judgment and in support of its own motion for summary judgment. OMB's brief is accompanied by two affidavits and a Vaughn index.[2] The Vaughn index lists five documents by number that have been "withheld in full," and contains columns for reporting the subject of the document (e.g., "U.S. Department of the Interior Agency Reform Plan"), its author and number of pages, the exemption and privilege claimed, and a "description of information withheld." Vaughn Index, Walsh Decl. Ex. 1, Dkt. No. 21-1 (capitalization omitted).

The cross-motions for summary judgment have been fully briefed by the parties. They are now ripe for review.

---

[2] "A 'Vaughn index' is a document supplied by government agencies to opposing parties and the court [in FOIA litigation] that identifies 'each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption.'" Hamdan v. U.S. Dep't of Justice, 797 F.3d 759, 769 n.4 (9th Cir. 2015) (quoting Wiener v. Fed. Bureau of Investigation, 943 F.2d 972, 977 (9th Cir. 1991)). "The Vaughn index received its name from the decision in which the use of such an index was first discussed." Rein v. United States Patent & Trademark Office, 553 F.3d 353, 357 n.6 (4th Cir. 2009) (citing Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973)). The index is "designed to enable the district court to rule on a privilege without having to review the document itself" and therefore functions as "a surrogate for the production of documents for in camera review." Ethyl Corp. v. United States Envtl. Prot. Agency, 25 F.3d 1241, 1249 (4th Cir. 1994).

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists, the court must "view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "When faced with cross-motions for summary judgment, [courts] consider 'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" Bacon v. City of Richmond, 475 F.3d 633, 636–37 (4th Cir. 2007) (quoting Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003)). "The court must deny both motions if it finds that there is a genuine dispute of material fact, but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." Sky Angel U.S., LLC v. Discovery Commc'ns., LLC, 95 F. Supp. 3d 860, 869 (D. Md. 2015) (internal quotation marks and citation omitted).

"[D]istrict courts typically dispose of FOIA cases on summary judgment before a plaintiff can conduct discovery." Turner v. United States, 736 F.3d 274, 282 (4th Cir. 2013) (internal quotation marks and citation omitted). In such cases, "summary judgment may be granted on the basis of agency affidavits alone if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." Judicial Watch, Inc. v. U.S. Secret Serv., 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks and citations omitted). However, if an agency's affidavits are called into question by contradictory evidence, limited discovery is appropriate.

Goldner v. Soc. Sec. Admin., 293 F. Supp. 3d 540, 544–45 (D. Md. 2017); see also Murphy v. Fed. Bureau of Investigation, 490 F. Supp. 1134, 1136 (D.D.C. 1980) ("It is beyond question that discovery is appropriate and often necessary in a FOIA case. But such discovery is limited to factual disputes. These include whether the agency engaged in a good-faith search for all materials, [and] whether the agency indexed all documents . . . .").

### Discussion

FOIA was enacted in 1966 "'to establish a general philosophy of full agency disclosure,' S. Rep. No. 89-813, at 3 (1965), and 'to assure the availability of Government information necessary to an informed electorate,' H.R. Rep. No. 89-1497, at 12 (1966)." Coleman v. Drug Enf't Admin., 714 F.3d 816, 818 (4th Cir. 2013). The statute provides, subject to certain enumerated exemptions, that each federal agency upon a proper request for records "shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A); see also id. § 552(b) (listing nine categories of documents to which FOIA does not apply).

FOIA confers jurisdiction on federal district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). "Under this provision, 'federal jurisdiction is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" United States Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989) (quoting Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980)). "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." Id. When a complaint challenges the withholding of records requested under FOIA, the court must "determine the matter de novo, and may examine the contents of such

agency records in camera to determine whether such records or any part thereof shall be withheld under any of the [enumerated] exemptions . . . ." 5 U.S.C. § 552(a)(4)(B).

The statute places the burden "on the agency to sustain its action." Id. Consequently, the agency "bears the burden of proving that it has not 'improperly' withheld the requested records." Citizens for Responsibility & Ethics v. United States Dep't of Justice, 922 F.3d 480, 487 (D.D.C. 2019) (quoting Tax Analysts, 492 U.S. at 142 n.3). More specifically, "[a] defendant agency has the burden of establishing the adequacy of its search and that any identifiable document has either been produced or is subject to withholding under an exemption." Heily v. United States Dep't of Commerce, 69 F. App'x 171, 173 (4th Cir. 2003) (citing Carney v. United States Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994)).

## I.     Adequacy of OMB's Search

In this case, the parties first dispute whether OMB's search for the requested documents satisfied articulated standards of thoroughness. For the following reasons, the court concludes that genuine factual disputes and unanswered factual questions preclude the entry of summary judgment on this issue.

In responding to a FOIA request for records, an agency is required to "make reasonable efforts to search for the records in electronic form or format . . . ." 5 U.S.C. § 552(a)(3)(C). "The requirement to 'search' 'means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request.'" Rein v. United States Patent & Trademark Office, 553 F.3d 353, 359 (4th Cir. 2009) (quoting 5 U.S.C. § 552(a)(3)(D)). In judging the adequacy of an agency's search for documents, "the relevant question is not whether every single potentially responsive document has been unearthed, but whether the agency has

demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents." Ethyl Corp. v. United States Envtl. Prot. Agency, 25 F.3d 1241, 1246 (4th Cir. 1994) (internal quotation marks and citation omitted); see also Rein, 553 F.3d at 362 (observing that "FOIA does not require a perfect search, only a reasonable one"). "In demonstrating the adequacy of its search, however, an agency may not rest on an affidavit that simply avers that the search was conducted in a manner consistent with customary practice and established procedure." Ethyl Corp., 25 F.3d at 1246–47. Instead, the agency's affidavit "must be reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search." Id. (internal quotation marks and citation omitted).

"Affidavits submitted by an agency are accorded a presumption of good faith." Carney, 19 F.3d at 812 (internal quotation marks and citation omitted). Consequently, "discovery relating to the agency's search . . . generally is unnecessary if the agency's submissions are adequate on their face." Id. "When this is the case, the district court may forgo discovery and award summary judgment on the basis of affidavits." Id. (internal quotation marks and citation omitted). "In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that . . . summary judgment is otherwise inappropriate." Id. (emphasis added) (citations omitted); see also DiBacco v. United States Dep't of the Army, 926 F.3d 827, 832 (D.C. Cir. 2019) ("Summary judgment must be denied 'if a review of the record raises substantial doubt' about the search's adequacy, 'particularly in view of well defined requests and

positive indications of overlooked materials.'") (quoting <u>Valencia-Lucena v. United States Coast Guard</u>, 180 F.3d 321, 326 (D.C. Cir. 1999)).

Based on the current record, the court is unable to conclude that OMB fulfilled its obligation to perform a search reasonably calculated to uncover all relevant documents. In moving for summary judgment on this issue, OMB relies on the declaration from Heather Walsh. However, Ms. Walsh's declaration lacks sufficient detail to allow the court to conclude that OMB's search was adequate.

For instance, the declaration indicates that OMB originally identified only one potential custodian of records responsive to SELC's FOIA request, namely, an "OMB custodian in the Office of Performance and Personnel Management (OPPM)" that "coordinated the <u>initial</u> government-wide reform efforts" on behalf of OMB. Walsh Decl. ¶ 7 (emphasis added). Although "[t]here is no requirement that an agency search every system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." <u>Oglesby v. United States Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990). As the plaintiff emphasizes in its reply brief, Walsh's declaration fails to explain why the defendant's initial search for documents responsive to the plaintiff's FOIA request did not include potential custodians who were involved at other stages of the government-wide reorganization efforts. Nor does it address why the search for responsive documents was not immediately broadened after the OPPM custodian only identified two documents. Such information is particularly relevant, given that OMB's own evidence indicates that <u>each</u> of the agencies at issue was required to produce <u>at least two</u> documents relevant to the plaintiff's FOIA request. <u>See</u> Bussow Decl. 5 (indicating that "[a]gencies provided OMB high-level drafts of initial reform ideas" on June 30, 2017 as required by

the OMB Memorandum, and that "[a]gencies submitted the reform proposals referred to in EO 13871 as agency reform plans to OMB" on September 11, 2017); see also Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("In certain circumstances, a court may place significant weight on the fact that a records search failed to turn up a particular document in analyzing the adequacy of a records search.").

Ms. Walsh's declaration also indicates that staff members in OMB's Office of General Counsel became aware of three additional responsive documents "in the course of preparing [the] declaration and consulting with other OMB components." Walsh Decl. ¶ 9. The court recognizes that the fact "[t]hat some documents were not discovered until a second, more exhaustive, search" does not necessarily render the entire search inadequate. Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999); see also Rein, 553 F.3d at 364 (holding that efforts to correct an omission discovered after a FOIA action was filed did not "render[] the entire search suspect" and instead demonstrated the agency's "good faith in conducting a thorough search to comply with FOIA"). However, the existing declarations provide little to no explanation as to why the additional documents were not discovered earlier. Compare Virginia-Pilot Media Cos. v. Dep't of Justice, 147 F. Supp. 3d 437, 446 (E.D. Va. 2015) (concluding that the defendant failed to satisfy FOIA's reasonable search requirements where the defendant admitted to having knowledge of additional responsive documents prior to the filing of a FOIA action and provided an inadequate explanation for their untimely disclosure), with Rein, 553 F.3d at 364 (emphasizing that "[w]here an oversight occurred, the [agency] explained the reason for the mistake and took appropriate steps to correct it so that all individuals known or believed to possess responsive materials performed the searches"), and Competitive Enter. Inst. v. Office of Sci. & Tech. Policy, 161 F. Supp. 3d 120, 136

(D.D.C. 2016) (holding that the defendant's correction of the record in a FOIA case did not warrant limited discovery since a supplemental declaration adequately explained why a document was not discovered earlier).

Finally, the current record, when viewed in the plaintiff's favor, contains "positive indications of [other] overlooked materials." Valencia-Lucena, 180 F.3d at 326. According to the plaintiff, OMB staff members have previously acknowledged being aware of responsive documents that are not listed on the Vaughn index filed by OMB. Although the defendant strongly disputes this assertion, it is not "without . . . factual support." Def.'s Reply Br. 5, Dkt. No. 23; see Hunter Decl. ¶ 15 ("On June 27, 2018 the parties had another conference call, in which I also participated. During this conference call Mr. Carney indicated that there were approximately 60–70 responsive documents.") (emphasis added).

For these reasons, the court is unable to determine from the existing record whether OPM has conducted an adequate search for documents responsive to the plaintiff's FOIA request. In light of the disputed and unanswered questions of fact, the parties' cross-motions for summary judgment will be denied without prejudice as to this issue, and the court will grant the plaintiff's alternative request to engage in limited discovery. See Pl.'s Reply Br. 9, n.4, Dkt. No. 22 (requesting the opportunity to conduct limited discovery relevant to the adequacy of the defendant's search in the event that the court denies both parties' motions on this issue). Specifically, the court will permit the plaintiff to conduct "deposition(s) of government staff with personal knowledge of OMB's search(es) in this matter." Id.; see also Jett v. Fed. Bureau of Investigation, 241 F. Supp. 3d 1, 14 (D.D.C. 2017) (allowing the plaintiff to conduct a telephonic deposition of the agency's declarant regarding the adequacy of its search for responsive documents); Lion Raisins, Inc. v.

<u>United States Dep't of Agric.</u>, 636 F. Supp. 1081, 1107 (E.D. Cal. 2009) (permitting the plaintiff to engage in "limited discovery via deposition" in order to create a sufficient factual record regarding the adequacy of the agency's search); <u>El Badrawi v. Dep't of Homeland Sec.</u>, 583 F. Supp. 2d 285, 231 (D. Conn. 2008) (permitting "limited discovery as to the adequacy of defendant's searches" in the form of depositions).

## II.    Propriety of Withholding Documents under Exemption 5

The parties also dispute whether the five documents listed in the current <u>Vaughn</u> index have been properly withheld in their entirety.   The documents are identified in the index as follows: (1) "U.S. Department of the Interior Agency Reform Plan"; (2) "U.S. Department of Agriculture Reform Plan"; (3) "U.S. Department of the Interior Agency Reform Plan & Workforce Planning Update (slide deck); (4) "U.S. Department of Agriculture Agency Reform Plan"; and (5) "U.S. Department of Agriculture Agency Reform Plan & Workforce Planning Update (slide deck)." <u>Vaughn</u> Index 1–2.

OMB claims that all five documents are subject to withholding in full under § 552(b)(5) ("Exemption 5").   Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency . . . ."   5 U.S.C. § 552(b)(5).   It encompasses, among other privileges, the deliberative process privilege on which OMB relies.   <u>Rein</u>, 553 F.3d at 366.   OMB "bears the burden of demonstrating that a requested document falls under the exemption."   <u>Id.</u> (citing 5 U.S.C. § 552(a)(4)(B)).   Even when an exemption applies, the agency is obligated to disclose "[a]ny reasonably segregable portion of a record" after removing the exempt material.   5 U.S.C. § 552(b). This is because "the focus [of] FOIA is information, not documents, and an agency cannot justify

withholding an entire document simply by showing that it contains some exempt material." Mead Data Central, Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." Sussman v. United States Marshals Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007).

The deliberative process privilege invoked by OMB "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8–9 (2001). The privilege is "unique to the government" and "has a number of purposes":

> it serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). Despite the important policy considerations underlying the deliberative process privilege, courts have emphasized that it should be "construed narrowly" and that the government must be "precise and conservative in its privilege claims." Ethyl Corp., 25 F.3d at 1248; see also Coastal States Gas Corp., 617 F.2d at 868 (observing that "the deliberative process privilege, like other executive privileges, should be narrowly construed").

In order to justify the application of the deliberative process privilege, "the government must show that, in the context in which the materials [were] used, the documents [were] both predecisional and deliberative." Solers, Inc. v. Internal Revenue Serv., 827 F.3d 323, 329 (4th Cir. 2016) (alterations in original) (internal quotation marks and citation omitted). A document is predecisional if it was "prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made." Petroleum Info. Corp. v. United States Dep't of the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992). As the United States Court of Appeals for the D.C. Circuit previously explained:

> Exemption 5 does not apply to final agency actions that constitute statements of policy or final opinions that have the force of law, or which explain actions that an agency has already taken. Nor does Exemption 5 protect communications that implement an established policy of an agency. This latter limitation on Exemption 5 grew out of the Supreme Court's approval . . . of the distinction drawn by lower courts between "predecisional communications, which are privileged, and communications made after the decision and designed to explain it, which are not."

Taxation with Representation Fund v. Internal Revenue Serv., 646 F.2d 666, 677 (D.C. Cir. 1981) (quoting Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 151–52 (1975)) (additional citations omitted). Additionally, "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." Coastal States Gas. Corp., 617 F.2d at 866; see also Sears, 421 U.S. at 161 (holding that "if an agency chooses to expressly adopt or incorporate by reference [a] . . . memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5").

In addition to being predecisional, a document must be deliberative to gain protection under the privilege invoked by OMB. City of Virginia Beach v. United States Dep't of Commerce, 995 F.2d 1247, 1253 (4th Cir. 1993). A document is deliberative if "it reflects the give-and-take of the consultative process . . . by revealing the manner in which the agency evaluates possible alternative policies or outcomes." Id. (internal quotation marks and citation omitted). "The privilege thus protects 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" Solers, Inc., 827 F.3d at 329 (emphasis omitted) (quoting City of Virginia Beach, 995 F.2d at 1253). On the other hand, the privilege "does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." Ethyl Corp., 25 F.3d at 1248. Additionally, "since the prospect of disclosure is less likely to make an advisor admit or fudge raw facts than opinions, purely factual material does not fall within the exemption unless it is inextricably intertwined with policymaking processes such that revelation of the factual material would simultaneously expose protected deliberation." City of Virginia Beach, 995 F.2d at 1253 (internal quotation marks and citation omitted).

Courts have recognized that when the deliberative process privilege is at issue, "the need for an agency to describe all of the information it withheld is particularly acute because the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process." Hunton & Williams LLP v. United States Envtl. Prot. Agency, 346 F. Supp. 3d 61, 74 (D.D.C. 2018) (internal quotation marks and citation omitted). Accordingly, "to sustain its burden of showing that records were properly withheld under Exemption 5, an agency must provide in its declaration and Vaughn index precisely tailored explanations for each withheld

record at issue." Nat'l Sec. Counselors v. Cent. Intelligence Agency, 960 F. Supp. 2d 101, 188 (D.D.C. 2013). Moreover, "[b]ecause Exemption 5 covers only those portions of the documents that are both predecisional and deliberative," an agency must offer sufficient evidence to allow the court to perform a proper segregability analysis. Public Citizen, Inc. v. Office of Mgmt. & Budget, 598 F.3d 865, 876 (D.C. Cir. 2009). "If the agency does not provide 'the minimal information necessary to make a determination concerning applicability of the deliberative process privilege[,]' then the court should deny the agency summary judgment." Hunton & Williams LLP v. Envtl. Prot. Agency, 248 F. Supp. 3d. 220, 241 (D.D.C. 2017) (quoting Elec. Frontier Found. v. United States Dep't of Justice, 826 F. Supp. 2d 157, 173 (D.D.C. 2011)).

Applying these principles, the court is unable to conclude from the present record that OMB is entitled to fully withhold all of the challenged documents pursuant to the deliberative process privilege. Although portions of the requested documents may ultimately be held to fall within this privilege, OMB has failed to meet its burden of demonstrating that the documents are exempt from disclosure in their entirety. In reaching this decision, the court recognizes that the Executive Order and the subsequent OMB Memorandum directed agencies to produce documents that would appear on the surface to fall within the deliberative process privilege, including "proposed" reorganization plans, "recommendations," and "draft" documents. E.O. 13781 § 2; OMB Memo. 1–4. However, the OMB Memorandum and other statements by the Executive Office support the plaintiff's position that the draft and final versions of the Agency Reform Plans may contain information that is not predecisional, and therefore not protected by the deliberative process privilege.

As SELC emphasizes in its reply brief, the OMB Memorandum indicates that OMB expected agencies to begin implementing at least some of their reorganization plans after the

agencies submitted their "high-level draft" Agency Reform Plans in June of 2017. OMB Mem. 3. The memorandum advised agency heads that OMB would meet with agencies in July of 2017 and "identify actions that [could] be implemented immediately." Id. "Following the meetings in July," agencies were expected to "take actions to implement agreed-upon reforms, while continuing to assess reform options for inclusion in the Agency Reform Plan[s] and the FY 2019 Budget." Id. The record indicates that by the time the President's Budget was released in February of 2018, certain reforms had already been implemented. For instance, the Department of the Interior, which authored two of the documents withheld from SELC, had "already begun to shift employees" from Washington, D.C. to other areas. President's Budget 10. Likewise, OMB's own Government-wide Reform Plan, which was published on June 21, 2018, reported that "[m]any of the more straightforward, agency-specific organizational opportunities" had already been "adopted by agencies under existing authorities." Government-wide Reform Plan 9.

SELC persuasively argues that if an Agency Reform Plan listed in the Vaughn index merely explains actions or reforms that an agency has already implemented or adopted, such information is not predecisional for purposes of the deliberative process privilege. See Texaco, P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 885 (1st Cir. 1995) (emphasizing that "post-decisional documents explaining or justifying a decision already made are not shielded" by the deliberative process privilege) (citing Sears, 421 U.S. at 151–52); Taxation with Representation Fund, 646 F.2d at 677 (observing that "Exemption 5 [does not] protect communications that implement an established policy of an agency" or "explain actions that an agency has already taken"); Judicial Watch, Inc. v. United States Postal Serv., 297 F. Supp. 2d 252, 260 (D.D.C. 2004) (emphasizing that a "post-decisional document, draft or no, by definition cannot be 'predecisional'"). Likewise, if

any of the documents identified in the Vaughn index, including "draft" proposals, discuss actions or reforms that have since been "adopted formally or informally, as the agency position on an issue," or "used by the agency in its dealings with the public," such documents may be deemed to have lost their predecisional status. Coastal States Gas Corp., 617 F.2d at 866. The same is true for the portion of any identified document that OMB itself expressly adopted in publishing its final Government-wide Reform Plan. See Judicial Watch, Inc. v. United States Dep't of Def., 847 F.3d 735, 739 (D.C. Cir. 2017) (explaining that a deliberative document can lose its predecisional character if an agency expressly chooses to use the document as a source of agency guidance).

Unfortunately, the Vaughn index and declarations submitted by OMB do not adequately address the plaintiff's challenges to the application of the deliberative process privilege, or otherwise provide enough information for the court to conduct a proper de novo review. The Vaughn index simply states, in wholly conclusory terms, that each of the five identified documents is "withheld in [f]ull" because "[r]elease of the document[s] would expose predecisional internal deliberations of Executive Branch Agencies and risk stifling frank discussions." Vaughn Index 1–2. Although Ms. Walsh's declaration includes several paragraphs that purport to establish the legal basis for invoking the deliberative process privilege, it also leaves unanswered questions which may be critically relevant to the propriety of withholding all of the identified documents in full. For instance, Ms. Walsh asserts that "[t]he five agency reform plans are internal and predecisional" because "they were generated prior to any final decisions being made" regarding the "proposed reforms." Walsh Decl. ¶¶ 12, 16. As indicated above, however, OMB's own documents indicate that agencies were expected to begin implementing agreed-upon reforms before they submitted their Agency Reform Plans to OMB in September of 2017, and that certain reforms

were, in fact, implemented by agencies under existing authorities. <u>See</u> OMB Mem. 2; OMB Government-Wide Reform Plan 9.

Additionally, even if certain documents were predecisional at the time they were drafted, OMB's declarations fail to adequately address "whether these drafts were (1) 'adopted formally or informally, as the agency position on an issue;' or (2) 'used by the agency in its dealings with the public.'" <u>Judicial Watch, Inc.</u>, 297 F. Supp. at 261 (quoting <u>Arthur Andersen & Co. v. Internal Revenue Serv.</u>, 679 F.2d 254, 257–58 (D.C. Cir. 1982)). "Either will defeat a claim of privilege, for both actions involve the exposure of documents to third parties." <u>Id.</u>; <u>see also</u> <u>Nat'l Res. Def. Council v. United States Dep't of Def.</u>, 388 F. Supp. 2d 1086, 1104 (C.D. Cal. 2005) (holding that the court was unable to assess whether documents were properly withheld in full or in part under the deliberative process privilege because the agency failed to address whether the documents "lost their predecisional status by being adopted as final policies or being shared with the public").

Based on the current record, the court is also unable to conclude that all non-exempt information was properly withheld by OMB. The defendant bears the burden of showing that no reasonably segregable information exists in a document withheld in full. <u>Ethyl Corp.</u>, 25 F.3d at 1241. Courts have held that "a statement representing that a line-by-line search was conducted along with a sufficiently detailed <u>Vaughn</u> index and declarations enumerating the reasons why each document was properly withheld is sufficient to fulfill the agency's obligation regarding segregability." <u>ViroPharma Inc. v. Dep't of Health & Human Servs.</u>, 839 F. Supp. 2d 184, 195 (D.D.C. 2012) (internal quotation marks and citations omitted). On the other hand, "[a] blanket declaration that all facts are so intertwined [with exempt material] to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability." <u>Ctr. for Biological</u>

<u>Diversity v. United States Envtl. Prot. Agency</u>, 279 F. Supp. 3d 121, 152 (D.D.C. 2004) (internal quotation marks and citation omitted). Instead, "the government must provide a relatively detailed justification, showing with reasonable specificity, why a document cannot be redacted in part instead of withheld in full." <u>Wadelton v. Dep't of State</u>, 106 F. Supp. 3d 139, 155 (D.D.C. 2015) (internal quotation marks and citation omitted).

Having reviewed the <u>Vaughn</u> index and the declarations submitted in support of OMB's motion, the court is unable to conclude that OMB has met its burden of demonstrating that no reasonably segregable information exists in the documents withheld from SELC. Ms. Walsh's declaration indicates that OMB conducted a "document-by-document, line-by-line review to identify material for release," and ultimately determined that factual information contained in certain portions of the requested documents is "inextricably intertwined with the deliberative information and policy recommendations." Walsh Dec. ¶ 22. The court agrees with the plaintiff that Ms. Walsh's declaration lacks sufficient detail to fulfill the agency's segregability obligations. Moreover, it is clear from the briefing that SELC does not seek only segregable factual information. Instead, SELC maintains that the requested documents contain segregable agency reform plans or policies that were not predecisional at the time they were drafted, or that lost their predecisional status. For the reasons set forth above, the court is unable to resolve this dispute on the current record. It necessarily follows that the court cannot make "specific findings of segregability" at this time. <u>Sussman</u>, 494 F.3d at 1116.

In sum, the court is unable to determine whether OMB properly withheld each of the identified documents in its entirety pursuant to the deliberative process privilege. Without additional information, the court cannot conduct the required <u>de novo</u> review. Accordingly, the

parties' cross-motions for summary judgment will be denied without prejudice as to the validity of withholding the requested documents under Exemption 5. If OMB wishes to maintain its exemption claims, "it must supplement its <u>Vaughn</u> index and declarations, adequately describing the records withheld and specifically detailing how the claimed exemptions apply to the withheld information." <u>See Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs</u>, 677 F. Supp. 2d 101, 108 (D.D.C. 2009). Alternatively, OMB must produce the documents for <u>in camera</u> review. To the extent that OMB continues to withhold information from the plaintiff, "it must also ensure that it produces all non-exempt and reasonably segregable information from the withheld records." <u>Id.</u>

### Conclusion

For the reasons stated, the parties' cross-motions for summary judgment will be denied without prejudice, and the plaintiff will be permitted to engage in limited discovery concerning the adequacy of the defendant's search for documents. The parties will be directed to meet and confer regarding the identification of deponent(s), and file a joint report summarizing the parties' respective positions on an appropriate schedule for moving forward with this matter.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This ___ day of September, 2019.

_____
Senior United States District Judge

24